IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


OLIVER LAWAL                               :        NO.  2:12-cv-03599-CDJ
6138 Walnut Street                         :
Philadelphia, PA 19139                     :
                                           :
            and                            :
                                           :
DAOSAMID BOUNTHISANE                        :        JURY TRIAL DEMANDED
605 W. Porter Street                       :
Philadelphia, PA 19148                     :
                                           :
            and                            :
                                           :
GAZALI SHITTU                              :
501 Long Lane                              :
Upper Darby, PA  19082                     :
                                           :
                    *Plaintiffs*           :
                                           :
            v.                             :
                                           :
MARK MCDONALD                              :
220 Chestnut Street, Suite 200             :
Philadelphia, PA 19106                     :
                                           :
            and                            :
                                           :
WILLIAM RILEY                              :
220 Chestnut Street, Suite 200             :
Philadelphia, PA 19106                     :
                                           :
            and                            :
                                           :
FREDERICK R. CHOW                          :
220 Chestnut Street, Suite 200             :
Philadelphia, PA 19106                     :
                                           :
                    *Defendants*           :

**AMENDED COMPLAINT**

## JURISDICTION and VENUE

1.     The jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 as Plaintiffs claim violations of their Constitutional rights under the Fourth and Fifth Amendments of the United States Constitution.

2.     Venue is proper in the United States District Court of the Eastern District of Pennsylvania pursuant to 28 U.S.C. 1391(b)(2) and 28 U.S.C. 1391(e) because a substantial part of the events giving rise to the claims occurred in the Eastern District of Pennsylvania.

## PARTIES

3.     Plaintiff Oliver Lawal is an individual residing at 6138 Walnut Street, Philadelphia, PA 19139.

4.     Plaintiff Daosamid Bounthisane is an adult individual residing at 605 W. Porter Street, Philadelphia, PA 19148.

5.     Plaintiff Gazali Shittu is an adult individual residing at 501 Long Lane, Upper Darby, PA 19082.

6.     At all times material hereto, Plaintiffs were United States citizens.

7.     At all times material hereto, Plaintiffs operated taxicabs in Philadelphia and were certified to operate taxicabs in Philadelphia, Pennsylvania by the Philadelphia Parking Authority ("PPA").

8.     Defendant Mark McDonald is an individual with an office at 220 Chestnut Street, Suite 200, Philadelphia, PA 19106 ("McDonald").

9.     Defendant William Riley is an individual with an office at 220 Chestnut Street, Suite 200, Philadelphia, PA 19106 ("Riley").

2

10.    Defendant Frederick R. Chow is an individual with an office at 220 Chestnut Street, Suite 200, Philadelphia, PA 19106 ("Chow").

11.    At all time material hereto, defendants McDonald, Riley and Chow (collectively "Defendants") were employed as special agents by the United States Immigration and Customs Enforcement ("ICE"), which is a division of the United States Department of Homeland Security.

## FACTUAL BACKGROUND

12.    In or about June 2009, defendant McDonald contacted William P. Schmid ("Schmid"), the Enforcement Manager of PPA's Taxicab and Limousine Division, to request a list of all taxicab drivers certified by PPA to operate a taxicab in Philadelphia.

13.    Upon information and belief, Schmid provided a list of all certified taxicab drivers to defendant McDonald.

14.    Over the next year, PPA and ICE, including Defendants, exchanged various versions of the certified operator list in an effort to create a working list that identified illegal aliens or immigrants certified by PPA to operate taxicabs in Philadelphia (the "List").

15.    Defendants were responsible for the preparation of the List and unjustifiably included Plaintiffs on the List.

16.    On or about June 15, 2010, PPA, at the request and direction of Defendants, sent a letter to Plaintiffs advising each Plaintiff that he was entitled to a refund from PPA and instructing each Plaintiff to arrive at PPA headquarters on June 23, 2010 and to "hold [any] questions and phone calls until then."  A true and correct copy of the letters from the PPA are attached hereto as Exhibit "A" and made a part hereof.

17.     On June 23, 2010, each Plaintiff appeared at PPA headquarters and was advised by a representative of PPA, at the request and direction of Defendants, to return to PPA headquarters on June 30, 2010 to receive the refund.

18.     On June 23, 2010, Plaintiffs received another letter from PPA advising that each Plaintiff was entitled to a refund from PPA and instructing that each Plaintiff arrive at PPA headquarters on June 30, 2010.  A true and correct copy of the June 23, 2010 letter from Schmid to Lawal is attached hereto as Exhibit "B" and made a part hereof.  PPA sent the June 23, 2010 letters at the request and direction of Defendants.

19.     After arriving at PPA headquarters on June 30, 2010 and as more specifically set forth below, Plaintiffs were wrongfully and without probable cause arrested and detained by Defendants for several hours for alleged immigration violations.


**COUNT I – *BIVENS* CLIAM FOR VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**Plaintiff Gazali Shittu v. Defendants McDonald, Chow and Riley**

20.     Plaintiff Shittu hereby incorporates the averments contained in paragraphs 1 through 19 above as if fully set forth at length herein.

21.     On or about June 30, 2010, Plaintiff Shittu complied with the June 23, 2010 letter and arrived at PPA's headquarters at approximately 7:00 a.m.

22.     After providing his driver's license, taxicab ID, name, date of birth, address and social security number to an unidentified, female special agent of ICE, Plaintiff Shittu was instructed to enter another room to receive his refund.

23.     Upon entering the room, Plaintiff Shittu was suddenly and violently attacked, thrown against a wall and handcuffed by Defendants and other ICE special agents who were

4

under Defendants' direction or control, and was told he was being arrested for an alleged immigration violation.

24.     During his arrest, Plaintiff Shittu repeatedly told Defendants and other ICE special agents under Defendants' direction or control that he was a U.S. citizen.

25.     After his wrongful arrest, Plaintiff Shittu was removed to another room where he was detained, handcuffed and interrogated for more than one hour by Defendants and other ICE special agents who were under Defendants' direction or control.

26.     During his wrongful detention, Plaintiff Shittu repeatedly told Defendants and other ICE special agents under Defendants' direction or control that he was a U.S. citizen.

27.     After he had been detained for more than one hour, Plaintiff Shittu was told by Defendants and other ICE special agents under Defendants' direction or control that Plaintiff Shittu had been mistakenly detained.

28.     Despite acknowledging that Plaintiff Shittu was a U.S. citizen who had been wrongly seized, Defendants repeatedly advised Plaintiff Shittu that he was not permitted to leave.

29.     Plaintiff Shittu was taken to another room where other taxi cab drivers were being detained and was held in custody against his will for several additional hours.

30.     While Plaintiff Shittu was held in custody with other taxi cab drivers, Defendants did not permit Plaintiff Shittu to speak or stand.

31.     Plaintiff Shittu and Plaintiff Lawal attempted to speak to each other while detained in this room, but Defendants separated Plaintiff Shittu and Plaintiff Lawal from one another and again advised them that they were not permitted to speak to anyone else in the room.

32.     Plaintiff Shittu asked Defendants or other ICE agents if he was permitted to leave PPA Headquarters, but Defendants told Plaintiff Shittu that he had to sit in the room with the other taxi cab drivers who had been detained and was not permitted to leave.

33.     Defendants further stated that Plaintiff Shittu was not permitted to leave because Defendants did not want him to advise other taxi cab drivers of the activity occurring at PPA headquarters that day.

34.     Plaintiff Shittu understood that he was not permitted to leave the building.

35.     There were several ICE agents standing by the exit, which further caused Plaintiff Shittu to believe that he was not permitted to leave.

36.     There were approximately four (4) uniformed agents and ten (10) plainclothes agents in the room with Plaintiff Shittu and the other detained taxi cab drivers, many of whom had guns strapped to their waists.

37.     As a result of his violent, unlawful arrest and detention, Plaintiff Shittu's constitutional rights were violated, including his right to be secure against unreasonable seizure under the Fourth Amendment to the United States Constitution.

38.     Defendants were present for and participated directly in the unlawful arrest, seizure and detention of Plaintiff Shittu which violated Plaintiff Shittu's rights under the Fourth Amendment.

39.     Defendants violated the Fourth Amendment constitutional rights of Plaintiff Shittu through the following actions:

(a)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Shittu's constitutional rights by arresting, seizing and detaining Plaintiff Shittu without any probable cause;

(b)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Shittu's constitutional rights by failing or refusing to release Plaintiff Shittu once Defendants were aware that Plaintiff Shittu was a U.S. citizen; and

(c)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Shittu's constitutional rights by failing or refusing to instruct those ICE agents under their direction and control to release Plaintiff Shittu once Defendants were aware that Plaintiff Shittu was a U.S. citizen.

40.     Defendants, acting under color of Federal law, deprived Plaintiff Shittu of his rights secured by the Fourth Amendment to the Constitution of the United States.

41.     Defendants' detention of Plaintiff Shittu, after Defendants realized he was a U.S. citizen, was not reasonable, appropriate or lawful under the circumstance as aforesaid.

42.     Defendants' actions were outrageous and represented a reckless disregard to the Fourth Amendment constitutional rights of Plaintiff Shittu.

43.     Defendants' actions violated clearly established Fourth Amendment rights of Plaintiff Shittu of which a reasonable person would have known.

44.     Defendants directed, knew of and acquiesced in the deprivation of Plaintiff Shittu's Fourth Amendment rights.

45.     As a result of the deprivation of Plaintiff Shittu's Fourth Amendment rights, Plaintiff Shittu suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Shittu demands compensatory and punitive damages in an amount in excess of the applicable arbitration limits.

## COUNT II – *BIVENS* CLAIM FOR VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Plaintiff Gazali Shittu v. Defendants McDonald, Chow and Riley

46.     Plaintiff Shittu hereby incorporates the averments contained in paragraphs 1 through 45 above as if fully set forth at length herein.

47.     As a U.S. citizen Plaintiff Shittu has constitutionally protected rights to liberty and due process of law under the Fifth Amendment to the United State Constitution.

48.     Defendants violated the Fifth Amendment constitutional rights of Plaintiff Shittu through the following actions:

(a)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Shittu's constitutional rights by failing to ensure that no U.S. citizen's name was on the List; and

(b)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Shittu's constitutional rights by including Plaintiff Shittu's name on the List.

49.     The action of Defendants in including Plaintiff Shittu's name on the List, as aforesaid, violated his rights to liberty and substantive due process.

50.     The action of Defendants in including Plaintiff Shittu's name on the List were egregious, outrageous and conscience shocking.

51.     As a result of the deprivation of Plaintiff Shittu's Fifth Amendment rights, Plaintiff Shittu suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Shittu demands compensatory and punitive damages in an amount in excess of the applicable arbitration limits.

## COUNT III – *BIVENS* CLAIM FOR VIOLATION OF FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Plaintiff Daosamid Bounthisane v. Defendants McDonald, Chow and Riley

52.     Plaintiff Bounthisane hereby incorporates the averments contained in paragraphs 1 through 51 above as if fully set forth at length herein.

53.     On or about June 30, 2010, Plaintiff Bounthisane complied with the June 23, 2010 letter and arrived at PPA's headquarters at approximately 9:00 a.m.

54.     After providing his driver's license, taxicab ID, name, date of birth, address and social security number to an unidentified, female special agent of ICE, Plaintiff Bounthisane was instructed to enter another room to receive his refund.

55.     Upon entering the room, Plaintiff Bounthisane was suddenly and violently attacked, thrown against a wall and handcuffed by Defendants and other ICE special agents who were under Defendants' direction or control, and was told he was being arrested for an alleged immigration violation.

56.     During his arrest, Plaintiff Bounthisane repeatedly told Defendants and other ICE special agents under Defendants' direction or control that he was a U.S. citizen.

57.     At the time Plaintiff Bounthisane was unjustifiably detained, Defendants were already aware that Plaintiff Shittu was a U.S. citizen whose name had had been wrongfully included on the List.

58.     After his wrongful arrest, Plaintiff Bounthisane was removed to another room where he was detained, handcuffed and interrogated for more than one hour by Defendants and other ICE special agents who were under Defendants' direction or control.

59.     During his wrongful detention, Plaintiff Bounthisane repeatedly told Defendants and other ICE special agents under Defendants' direction or control that he was a U.S. citizen.

60.    After he had been detained for more than one hour, Plaintiff Bounthisane was told by Defendants and other ICE special agents under Defendants' direction or control that Plaintiff Bounthisane had been mistakenly detained.

61.    Despite acknowledging that Plaintiff Bounthisane was a U.S. citizen who had been wrongly seized, Defendants advised Plaintiff Bounthisane that he was not permitted to leave.

62.    Plaintiff Bounthisane was taken to another room where other taxi cab drivers were being detained and was held in custody against his will for several additional hours.

63.    While Plaintiff Bounthisane was held in custody with the other taxi cab drivers who were also U.S citizens, Defendants did not permit Plaintiff Bounthisane to speak or stand

64.    Defendants told Plaintiff Bounthisane that he had to sit in the room with the other taxi cab drivers who had been detained and was not permitted to leave.

65.    Defendants further stated that Plaintiff Bounthisane was not permitted to leave because Defendants did not want him to advise other taxi cab drivers of the events occurring at PPA headquarters that day.

66.    Plaintiff Bounthisane understood that he was not permitted to leave the building.

67.    There were several ICE agents standing by the exit, which further caused Plaintiff Bounthisane to believe that he was not permitted to leave.

68.    There were approximately four (4) uniformed agents and ten (10) plainclothes agents in the room with Plaintiff Bounthisane and the other detained taxi cab drivers, many of whom had guns strapped to their waists.

69.     As a result of his violent, unlawful arrest and detention, Plaintiff Bounthisane's constitutional rights were violated, including his right to be secure against unreasonable seizure under the Fourth Amendment to the United States Constitution.

70.     Defendants were present for and participated directly in the unlawful arrest, seizure and detention of Plaintiff Bounthisane which violated Plaintiff Bounthisane's rights under the Fourth Amendment.

71.     Defendants violated the Fourth Amendment constitutional rights of Plaintiff Bounthisane through the following actions:

(a)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Bounthisane's constitutional rights by arresting, seizing and detaining Plaintiff Bounthisane without any probable cause;

(b)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Bounthisane's constitutional rights by failing or refusing to release Plaintiff Bounthisane once Defendants were aware that Plaintiff Bounthisane was a U.S. citizen; and

(c)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Bounthisane's constitutional rights by failing or refusing to instruct those ICE agents under their direction and control to release Plaintiff Bounthisane once Defendants were aware that Plaintiff Bounthisane was a U.S. citizen.

72.     Defendants, acting under color of Federal law, deprived Plaintiff Bounthisane of his rights secured by the Fourth Amendment to the Constitution of the United States.

73.     Defendants' detention of Plaintiff Bounthisane, after Defendants realized he was a U.S. citizen, was not reasonable, appropriate or lawful under the circumstance as aforesaid.

74.     Defendants' actions were outrageous and represented a reckless disregard to the Fourth Amendment constitutional rights of Plaintiff Bounthisane.

75.     Defendants' actions violated clearly established Fourth Amendment rights of Plaintiff Bounthisane of which a reasonable person would have known.

76.     Defendants directed, knew of and acquiesced in the deprivation of Plaintiff Bounthisane's Fourth Amendment rights.

77.     As a result of the deprivation of Plaintiff Bounthisane's Fourth Amendment rights, Plaintiff Bounthisane suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Bounthisane demands compensatory and punitive damages in an amount in excess of the applicable arbitration limits.


## COUNT IV – *BIVENS* CLAIM FOR VIOLATION OF FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Plaintiff Daosamid Bounthisane v. Defendants McDonald, Chow and Riley

78.     Plaintiff Bounthisane hereby incorporates the averments contained in paragraphs 1 through 77 above as if fully set forth at length herein.

79.     As a U.S. citizen Plaintiff Bounthisane has constitutionally protected rights to liberty and due process of law under the Fifth Amendment to the United State Constitution.

80.     Defendants violated the Fifth Amendment constitutional rights of Plaintiff Bounthisane through the following actions:

(a)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Bounthisane's constitutional rights by failing to ensure that no U.S. citizen's name was on the List;  and

(b)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Bounthisane's constitutional rights by including Plaintiff Bounthisane's name on the List.

81.     The action of Defendants in including Plaintiff Bounthisane's name on the List, as aforesaid, violated his rights to liberty and substantive due process.

82.     The action of Defendants in including Plaintiff Bounthisane's name on the List were egregious, outrageous and conscience shocking.

83.     As a result of the deprivation of Plaintiff Bounthisane's Fifth Amendment rights, Plaintiff Bounthisane suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Bounthisane demands compensatory and punitive damages in an amount in excess of the applicable arbitration limits.

## COUNT V – *BIVENS* CLAIM FOR VIOLATION OF FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Plaintiff Oliver Lawal v. Defendants McDonald, Chow and Riley

84.     Plaintiff Lawal hereby incorporate paragraphs 1 through 83 above as if fully set forth at length herein.

85.     On or about June 30, 2010, Plaintiff Lawal complied with the June 23, 2010 letter and arrived at PPA's headquarters at approximately 9:30 a.m.

86.     After providing his driver's license, taxicab ID, name, date of birth, address and social security number to an unidentified, female special agent of ICE, Plaintiff Lawal was instructed to enter another room to receive his refund.

87.     Upon entering the room, Plaintiff Lawal was suddenly and violently attacked, thrown against a wall and handcuffed by Defendants and other ICE special agents who were

under Defendants' direction or control, and was told he was being arrested for an alleged immigration violation.

88.     During his arrest, Plaintiff Lawal repeatedly told Defendants and other ICE special agents under Defendants' direction or control that he was a U.S. citizen.

89.     At the time Plaintiff Lawal was unjustifiably detained, Defendants were already aware that Plaintiff Shittu and Plaintiff Bounthisane were U.S. citizens whose names had had been wrongfully included on the List.

90.     After his wrongful arrest, Plaintiff Lawal was removed to another room where he was detained, handcuffed and interrogated for more than one hour by Defendants and other ICE special agents who were under Defendants' direction or control.

91.     During his wrongful detention, Plaintiff Lawal repeatedly told Defendants and other ICE special agents who were under Defendants' direction or control that he was a U.S. citizen.

92.     During his wrongful detention and interrogation, Plaintiff Lawal told Defendants and the ICE special agents under Defendants' direction or control that his valid, U.S. passport and certificate of citizenship were located in his taxicab.

93.     Defendants directed a representative of PPA to search Plaintiff Lawal's taxicab, which had already been towed to an unknown location.

94.     The PPA representative traveled to this unknown location and returned with Plaintiff Lawal's valid U.S. passport and certificate of citizenship.

95.     At that point, Plaintiff Lawal's taxicab was brought back to the PPA headquarters.

96.     Once Plaintiff Lawal's passport and certificate of citizenship were provided to Defendants and after Plaintiff Lawal had been detained for more than one hour, Plaintiff Lawal

14

was told by Defendants or other ICE special agents under Defendants' direction or control that Plaintiff Lawal had been mistakenly detained.

97.     Despite acknowledging that Plaintiff Lawal was a U.S. citizen who had been wrongly seized, Defendants advised Plaintiff Lawal that he was not permitted to leave.

98.     Plaintiff Lawal was taken to another room where other taxi cab drivers were being detained and was held in custody against his will for several additional hours.

99.     While Plaintiff Lawal was held in custody with the other taxi cab drivers who had been found to be U.S citizens, Defendants did not permit Plaintiff Lawal to speak or stand.

100.    Plaintiff Lawal and Plaintiff Shittu attempted to speak to each other while in this room, but Defendants separated them from each other and again advised them that they were not permitted to speak to anyone else in the room.

101.    Defendants offered Plaintiff Lawal donuts and/or coffee while he was detained.

102.    Plaintiff Lawal stated that he did not want anything to eat or drink, but that he just wanted to leave.

103.    Defendants told Plaintiff Lawal that he had to sit in the room with the other taxi cab drivers who had been detained and was not permitted to leave.

104.    Defendants further stated that Plaintiff Lawal was not permitted to leave because Defendants did not want him to advise other taxi cab drivers of the activities occurring at PPA headquarters that day.

105.    Plaintiff Lawal understood that he was not permitted to leave the building.

106.    There were several ICE agents standing by the exit, which further caused Plaintiff Lawal to believe that he was not permitted to leave.

107.   There were approximately four (4) uniformed agents and ten (10) plainclothes agents in the room with Plaintiff Lawal and the other detained taxi cab drivers, many of whom had guns strapped to their waists.

108.   As a result of his violent, unlawful arrest and detention, Plaintiff Lawal's constitutional rights were violated, including his right to be secure against unreasonable seizure under the Fourth Amendment to the United States Constitution.

109.   Defendants were present for and participated directly in the unlawful arrest, seizure and detention of Plaintiff Lawal which violated Plaintiff Lawal's rights under the Fourth Amendment.

110.   Defendants violated the Fourth Amendment constitutional rights of Plaintiff Lawal through the following actions:

(a)   Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Lawal's constitutional rights by arresting, seizing and detaining Plaintiff Lawal without any probable cause;

(b)   Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Lawal's constitutional rights by failing or refusing to release Plaintiff Lawal once Defendants were aware that Plaintiff Lawal was a U.S. citizen; and

(c)   Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Lawal's constitutional rights by failing or refusing to instruct those ICE agents under their direction and control to release Plaintiff Lawal once Defendants were aware that Plaintiff Lawal was a U.S. citizen.

111.   Defendants, acting under color of Federal law, deprived Plaintiff Lawal of his rights secured by the Fourth Amendment to the Constitution of the United States.

112.    Defendants' detention of Plaintiff Lawal, after Defendants realized he was a U.S. citizen, was not reasonable, appropriate or lawful under the circumstance as aforesaid.

113.    Defendants' actions were outrageous and represented a reckless disregard to the Fourth Amendment constitutional rights of Plaintiff Lawal.

114.    Defendants' actions violated clearly established Fourth Amendment rights of Plaintiff Lawal of which a reasonable person would have known.

115.    Defendants directed, knew of and acquiesced in the deprivation of Plaintiff Lawal's Fourth Amendment rights.

116.    As a result of the deprivation of Plaintiff Lawal's Fourth Amendment rights, Plaintiff Lawal suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Lawal demands compensatory and punitive damages from the Defendants in an amount in excess of the applicable arbitration limits.


## COUNT VI – *BIVENS* CLAIM FOR VIOLATION OF FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### Plaintiff Oliver Lawal v. Defendants McDonald, Chow and Riley

117.    Plaintiff Lawal hereby incorporates the averments contained in paragraphs 1 through 116 above as if fully set forth at length herein.

118.    As a U.S. citizen Plaintiff Lawal has constitutionally protected rights to liberty and due process of law under the Fifth Amendment to the United State Constitution.

119.    Defendants violated the Fifth Amendment constitutional rights of Plaintiff Lawal through the following actions:

(a)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Lawal's constitutional rights by failing to ensure that no U.S. citizen's name was on the List; and

(b)     Defendants were reckless, grossly negligent and acted with deliberate indifference to Plaintiff Lawal's constitutional rights by including Plaintiff Lawal's name on the List.

120.    The action of Defendants in including Plaintiff Lawal's name on the List, as aforesaid, violated his rights to liberty and substantive due process.

121.    The action of Defendants in including Plaintiff Lawal's name on the List was egregious, outrageous and conscience shocking.

122.    As a result of the deprivation of Plaintiff Lawal's Fifth Amendment rights, Plaintiff Lawal suffered harms, including loss of liberty, humiliation and emotional distress.

WHEREFORE, Plaintiff Lawal demands compensatory and punitive damages from the Defendants in an amount in excess of the applicable arbitration limits.


MORRIS and CLEMM, P.C.


Dated:  October 22, 2012          By: _____
                                       Seth D. Wilson, Esquire
                                       David R. Jacquette, Esquire
                                       Attorneys for Plaintiffs
                                       527 Plymouth Road, Suite 416
                                       Plymouth Meeting, PA  19462
                                       swilson@morrisclemm.com
                                       djacquette@morrisclemm.com
                                       (610) 825-0500


18

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2012, I caused a true and correct copy of the foregoing Amended Complaint to be served by first class mail, postage prepaid, upon the following:

Viveca D. Parker, Esquire
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476

Attorneys for Defendants

_____
Seth D. Wilson, Esquire
Attorneys for Plaintiffs

## VERIFICATION

I, **OLIVER LAWAL**, hereby certify that I am a Plaintiff in the foregoing civil action and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that statements made herein are subject to the penalties of Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 10 /19 / 12                                    _____
                                                                      Oliver Lawal

# VERIFICATION

I, **DAOSAMID BOUNTHISANE**, hereby certify that I am a Plaintiff in the foregoing civil action and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that statements made herein are subject to the penalties of Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Date: _10 - 19 - 2012_          _____
                                      Daosamid Bounthisane

## <u>VERIFICATION</u>

I, **GAZALI O. SHITTU**, hereby certify that I am a Plaintiff in the foregoing civil action and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief.  I understand that statements made herein are subject to the penalties of Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 10/19/12

Gazali O. Shittu

# EXHIBIT "A"



**Philadelphia
Parking
Authority**

Taxicab and Limousine Division
2415 S. Swanson Street
Philadelphia, PA 19148-4113
215-683-9400
215-683-9785

6-15-10

DRIVER:

*Lawal Olajide (H-100976)*

RE: REIMBURSEMENT AUDIT-YOUR ACCOUNT

Congratulations,

An outside Agency recently completed an audit of all taxicab driver accounts.  It appears that you are owed money.  On Wednesday 6-23-10 Auditors will be here at the Taxicab and Limousine Division to issue your refund.

To be eligible for your REFUND please come to PPA/TLD Headquarters, 2415 S. Swanson Street, at your appointment time listed below.  Please hold your questions and phone calls until then .

*6-23-10 / 9:30 Am*

Sincerely,

William P. Schmid
Enforcement Manager
Taxicab and Limousine Division
The Philadelphia Parking Authority
2415 S. Swanson Street
Philadelphia, Pa., 19148-4113
W: 215.683.9471
F:  215.683.9452
WSchmid@Philapark.org



**Philadelphia
Parking
Authority**

Taxicab and Limousine Division
2415 S. Swanson Street
Philadelphia, PA 19148-4113
215-683-9400
215-683-9785

6-15-10

DRIVER:

Dalsamid Bouthisane (H-104628)

RE: REIMBURSEMENT AUDIT-YOUR ACCOUNT

Congratulations,

An outside Agency recently completed an audit of all taxicab driver accounts.  It appears that you are owed money.  On Wednesday 6-23-10 Auditors will be here at the Taxicab and Limousine Division to issue your refund.

To be eligible for your REFUND please come to PPA/TLD Headquarters, 2415 S. Swanson Street, at your appointment time listed below.  Please hold your questions and phone calls until then .

6-23-10 / 9:30 Am

Sincerely,

William P. Schmid
Enforcement Manager
Taxicab and Limousine Division
The Philadelphia Parking Authority
2415 S. Swanson Street
Philadelphia, Pa., 19148-4113
W: 215.683.9471
F:  215.683.9452
WSchmid@Philapark.org



**Philadelphia
Parking
Authority**

Taxicab and Limousine Division
2415 S. Swanson Street
Philadelphia, PA 19148-4113
215-683-9400
215-683-9785

6-15-10

DRIVER:

Gazali Shittu (H-100539)

RE: REIMBURSEMENT AUDIT-YOUR ACCOUNT

Congratulations,

An outside Agency recently completed an audit of all taxicab driver accounts.  It appears that you are owed money.  On Wednesday 6-23-10 Auditors will be here at the Taxicab and Limousine Division to issue your refund.

To be eligible for your REFUND please come to PPA/TLD Headquarters, 2415 S. Swanson Street, at your appointment time listed below.  Please hold your questions and phone calls until then.

6-23-10 / 9:30 Am

Sincerely,

William P. Schmid
Enforcement Manager
Taxicab and Limousine Division
The Philadelphia Parking Authority
2415 S. Swanson Street
Philadelphia, Pa., 19148-4113
W: 215.683.9471
F: 215.683.9452
WSchmid@Philapark.org

# EXHIBIT "B"



**Philadelphia
Parking
Authority**

Taxicab and Limousine Division
2415 S. Swanson Street
Philadelphia, PA 19148-4113
215-683-9400
215-683-9785

6-23-10

DRIVER:

*Lawal Olajide (H-100976)*

RE: REIMBURSEMENT AUDIT-YOUR ACCOUNT

Congratulations,

It appears that you are owed money. An outside Agency recently completed an audit of all taxicab driver accounts. However, you were mistakenly given an appointment on 6-23-10. Your appointment has been rescheduled to Wednesday 6-30-10. This is the only day that the Auditors will be here at the Taxicab and Limousine Division to issue refunds. We are sorry for any inconvenience and look forward to helping you in the future.

To be eligible for your REFUND please come to PPA/TLD Headquarters, 2415 S.Swanson Street, at your appointment time listed below. Please hold your questions and phone calls until then. *6-30-10 / 9:30 Am*

Sincerely,

William P. Schmid
Enforcement Manager
Taxicab and Limousine Division
The Philadelphia Parking Authority
2415 S. Swanson Street
Philadelphia, Pa., 19148-4113
W: 215.683.9471
F: 215.683.9452
WSchmid@Philapark.org