IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLIVER LAWAL, DAOSAMID BOUNTHISANE, and GAZALI SHITTU, | : : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 12-3599 |
| v. | : : | |
| MARK MCDONALD, WILLIAM RILEY, and FREDERICK R. CHOW, | : : : | |
| Defendants. | : | |

## **MEMORANDUM**

**Jones, II, J.**                                                                                                February 26, 2013

Plaintiffs Oliver Lawal, Daosamid Bounthisane and Gazali Shittu brought this action claiming violations of their rights under the Fourth and Fifth Amendments of the United States Constitution. Defendants Mark McDonald, William Riley and Frederick R. Chow are employed as Special Agents by the Immigration and Customs Enforcement bureau ("ICE") of the United States Department of Homeland Security. Plaintiffs, who are each United States citizens and hold licenses to operate taxicabs in the City of Philadelphia, allege that the Defendants wrongfully arrested and detained them during a sweep coordinated by ICE and the Philadelphia Parking Authority ("PPA") designed to detect illegal aliens who were driving taxis in Philadelphia. Presently before this Court is a Motion by the Defendants to dismiss Plaintiffs' Amended Complaint, or in the alternative, for summary judgment. (Dkt. No. 8.) For the reasons that follow, the Motion is granted.[1]

---

[1] All parties have appended matters outside of the pleadings to their moving papers. Because this Court determines the Motion without reference to the outside matter, the Motion is construed solely as one filed pursuant to Fed. R. Civ. P. 12(b)(6).

I.   **STANDARD OF REVIEW**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id*. (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation."). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).

II.   **FACTS**

In their Amended Complaint,[2] Plaintiffs allege that in or about June 2009, Defendant McDonald contacted William P. Schmid, the Enforcement Manager of PPA's Taxicab and Limousine Division, to request a list of all taxicab drivers certified by PPA to operate a taxicab in Philadelphia ("the PPA List"). (Am. Compl. ¶ 12.) Over the next year, PPA and ICE then

---

[2]Plaintiffs' original Complaint was filed on June 26, 2012. Defendants filed a Motion to Dismiss the Complaint on October 2, 2012. Thereafter, Plaintiffs filed the Amended Complaint.

exchanged various versions of the operator list in an effort to create a final working list ("the working list") identifying suspected illegal alien taxicab drivers. (*Id.* at ¶ 14.) On June 15, 2010, PPA, "at the request and direction of Defendants, sent a letter to Plaintiffs advising each Plaintiff that he was entitled to a refund from PPA and instructed each Plaintiff to arrive at PPA headquarters on June 23, 2010." (*Id.* at ¶ 16.) Each Plaintiff appeared at PPA headquarters on June 23, 2010, but was told to return on June 30, 2010 to receive their refunds. (*Id.* at ¶¶ 17, 18.) When they arrived on June 30, 2010, each Plaintiff provided his driver's license, taxicab ID, and name, date of birth, address, and social security number to an unidentified female ICE agent, and was instructed to enter another room to receive their refunds. (*Id.* at ¶¶ 22, 54, 86.) Upon entering the other room, each Plaintiff alleges that he was suddenly and violently attacked, thrown against a wall and handcuffed by Defendants and other ICE agents under Defendants' direction and control, and were told they were under arrest for alleged immigration violations. (*Id.* at ¶¶ 23, 55, 87.) Each informed the ICE agents that they were United States citizens. (*Id.* at ¶¶ 24, 56, 88.) Each Plaintiff alleges that he was interrogated for more than one hour by Defendants and other ICE agents under Defendants' direction and control. (*Id.* at ¶¶ 25, 58, 90.) Thereafter, each Plaintiff was told he had been mistakenly detained, but all three were nonetheless held for several additional hours with other persons arrested in the operation, and were forbidden to stand or speak.³ (*Id.* at ¶¶ 27-30, 60-63, 96-99.) Defendants advised the Plaintiffs that they had to remain because Defendants did not want them to have an opportunity

---

³Plaintiff Lawal makes additional allegations that he told "Defendants and other ICE agents who were under Defendants' direction and control" that his United States passport and certificate of citizenship were located in his taxicab, which had already been towed to an unknown location by the PPA. An unnamed PPA representative traveled to this unknown location and returned with Lawal's documents. Thereafter, like the other Plaintiffs, he was told that he was mistakenly detained, but held for an additional time. (Am. Compl. ¶¶ 92-99.) Lawal also alleges that Defendants offered him coffee and donuts while he waited. (*Id.* ¶ 101.)

to advise other taxicab drivers of the ICE operation occurring at PPA headquarters that day. (*Id.* at ¶¶ 33, 65, 104.)

Based on these allegations, Plaintiffs assert *Bivens*[4] claims that Defendants' gross negligence and deliberate indifference violated their Fourth Amendment rights to be free from unreasonable seizure of their persons by arresting them without probable cause, by refusing to release them once they learned they were United States citizens, and by failing to release them once their citizenship was determined. (*Id.* at ¶¶ 39, 71, 110.) Plaintiffs also assert that Defendants' failure to ensure that no United States citizens' name was on the working list, and their mistakenly including the Plaintiffs on the working list, constituted outrageous and conscience shocking governmental conduct violative of their liberty and due process rights under the Fifth Amendment. (*Id.* at ¶¶ 46-50, 78-82, 117-121.) In their Motion, Defendants argue that the allegations contained in the Amended Complaint fail to state viable *Bivens* claims, and that each Defendant is entitled to qualified immunity. They also argue that Plaintiffs' Fifth Amendment claims should be dismissed because they are properly analyzed under the Fourth Amendment.

## III. THE FIFTH AMENDMENT CLAIMS

This Court finds that the claims Plaintiffs present as substantive due process claims under the Fifth Amendment — that Defendants' failure to ensure that no United States citizens' name was on the PPA list, and by including their names on the working list, was egregious, outrageous and conscience shocking — are properly addressed as Fourth Amendment unreasonable seizure claims. In *Graham v. Connor*, 490 U.S. 386 (1989), the United States Supreme Court held that "where a particular amendment provides an explicit textual source of constitutional protection

---

[4] A cause of action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) is the "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Iqbal*, 556 U.S. at 676 (*quoting Hartman v. Moore*, 547 U.S. 250, 254 (2006)).

4

against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 395 (holding that, in a case asserting both a Fifth Amendment substantive due process claim and a Fourth Amendment excessive force claim arising in the context of an arrest or investigatory stop, that the cause of action should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach). However, the Supreme Court has made clear that *Graham* is limited to situations where there is a specific constitutional provision that applies to the alleged conduct. *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (stating that "*Graham* requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *see also, Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843-844 (1998) (stating that substantive due process analysis is "inappropriate . . . if respondents' claim is 'covered by' the Fourth Amendment," but holding that *Graham* did not apply because there was no search or seizure under the Court's precedents); *Chester Upland Sch. Dist. v. Pennsylvania*, Civ. A. No. 12-132, 2012 WL 1344368, at *6 (E.D. Pa. April 17, 2012) (stating that Supreme Court precedents have shown distinct disfavor of allowing substantive claims of due process to proceed when alternative constitutional grounds can achieve the same results). Although the holding in *Graham* arose in the Fourth Amendment context of excessive force, it has been applied to other allegations of unreasonable searches and seizures. *See, e.g.*, *Garcia-Torres v. Holder*, 660 F.3d 333, 337 (8th Cir. 2011) (stating that "[a]ll claims of an unconstitutional search or seizure must be addressed solely in terms of the Fourth Amendment, not the "fundamental fairness" requirement "under a 'substantive due process' approach"); *Russo v. City of Bridgeport*, 479

F.3d 196, 205 (2nd Cir. 2007) (applying *Graham* to the Fourth Amendment context of a claim of unreasonably prolonged detention); *Bryant v. Vernoski*, Civ. A. No. 11-263, 2011 WL 4400820, at *3 (M.D. Pa. Sept. 1, 2011) (holding that plaintiffs could not state a substantive due process claim based on governmental behavior of shooting plaintiff's dog because claim was covered by the Fourth Amendment protection against unreasonable seizures of "effects"); *Schor v. North Braddock Borough,* 801 F. Supp. 2d 369, 379 (W.D. Pa. 2011) (same).

Here, Plaintiffs' Fifth Amendment claims are unquestionably covered by the Fourth Amendment since they are based on allegations of an unlawful seizure. While Plaintiffs argue that their Fifth Amendment claims are based on the creation of the working list and the inclusion of their names on it arise out of different conduct than their claims brought under the Fourth Amendment, taken in the light most favorable to Plaintiffs it is clear that the activity of identifying them as possible illegal aliens, and actually detaining them, was part of a single, continuous process that led to the asserted constitutional violations. Since the propriety of arrest and detention by governmental officials go to the heart of the Fourth Amendment protection against unreasonable seizures, this Court concludes that the substantive due process claims fail to state plausible claims for relief.[5]

## IV. THE FOURTH AMENDMENT CLAIMS

This Court also finds that Plaintiffs have failed to meet their pleading burden on their Fourth Amendment claims. First, the Amended Complaint is entirely bereft of factual allegations identifying each Defendant's specific actions in the incident leading to the Plaintiffs'

---

[5] Plaintiffs ask that, in the event this Court finds that their substantive due process claims are subject to dismissal, that they be permitted to file a further amendment in order to incorporate all relevant allegations contained in Counts II, IV and VI into the claims brought under the Fourth Amendment. In discussing the viability of the remaining claims and Defendants' entitlement to qualified immunity, this Court will assume that the entire factual basis for the Fifth Amendment claims already appear in Counts I, III and V.

appearances at the PPA headquarters, their treatment once they arrived, and the decision-making process leading to their eventual release, so as to plausibly draw a reasonable inference that any of the named Defendants is liable for any of the alleged misconduct. For example, the allegation that each Plaintiff was "suddenly and violently attacked, thrown against a wall and handcuffed" fails to name which specific Defendant engaged in this conduct. Likewise, Plaintiffs do not identify which Defendant held them in custody for several hours after their citizenship statuses were affirmatively established. Other than its introductory paragraphs, the Amended Complaint does not even mention Defendants Riley and Chow by name, and the sole mention of Defendant McDonald alleges only that he contacted the PPA to request the *initial* PPA list of all taxicab drivers certified by PPA to operate a taxicab in Philadelphia, an allegation that does not directly implicate the Plaintiffs' inclusion on the final working list of those taxicab drivers for whom citizenship status could not be confirmed, or their arrests and detention. (Am. Compl. ¶ 12.) While Plaintiffs argue that they have alleged that all Defendants "were present for and participated directly in the unlawful arrest, seizure and detention of each Plaintiff," (Pl. Br. at 13 (*citing* Am. Compl. ¶¶ 38, 70, 109)), this allegation is insufficient to plausibly permit this Court to draw a reasonable inference as to which Defendants are liable for the alleged misconduct.

Second, the *Iqbal* Court reiterated that a federal official sued in his or her individual capacity for alleged constitutionally tortious behavior cannot be held liable on the basis of some general link to allegedly responsible individuals or actions. *Id.*, 556 U.S. at 676-77 ("[A] plaintiff must plead that *each* Government-official defendant, through the official's *own* actions, has violated the Constitution. . . . [P]urpose rather than knowledge is required to impose *Bivens* liability on . . . an official charged with violations arising from his or her superintendent responsibilities") (emphasis added). *Accord, e.g.*, *Richards v. Pennsylvania*, 196 Fed. App'x 82,

85 (3d Cir. 2006) (agreeing that plaintiff's "failure to allege personal involvement on the part of defendant proved fatal to [plaintiff's] claims"). Accordingly, the allegations that Defendants acted collectively, or that other non-defendants acted under their collective direction and control, also fail to state plausible claims for relief.

V.      **QUALIFIED IMMUNITY**

Finally, this Court finds that Plaintiffs' allegations do not plausibly establish that the Defendants knowingly violated their clearly established rights. Accordingly, the doctrine of qualified immunity protects them "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). The doctrine applies unless Plaintiffs sufficiently plead that Defendants violated their "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." *Id.* at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may exercise

their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223 (2009).

It is well established that qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial [or the defendant is compelled to undergo other burdens of litigation]." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Therefore, "[w]here possible, qualified immunity should even protect officials from pretrial matters such as discovery, for '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Chinchello v. Fenton*, 805 F.2d 126, 130 (3d Cir.1986) (citations omitted).

This Court finds that the Plaintiffs have failed to plausibly allege that a reasonable ICE agent would believe that the conduct alleged in the Amended Complaint was unlawful. Notably, while the Amended Complaint contains the legal conclusion that Defendants "unjustifiably" and "outrageously" included them on the working list of persons suspected to be illegal aliens, they themselves plead that the process of creating the final working list took Defendants more than one year to complete, during which ICE agents "exchanged various versions" of the information provided by the PPA on the original PPA list in "an effort to create a working list that identified illegal aliens or immigrants certified by PPA to operate taxicabs in Philadelphia." (Am. Compl. ¶ 14.) Furthermore, with regard to the allegations concerning the Defendants' actions concerning the Plaintiffs' mistaken inclusion on the working list, their alleged arrest, and their initial interrogations to determine their citizenship status, this Court notes that ICE agents are empowered with the statutory authority to interrogate any alien or person *believed to be* an alien

as to his right to be or to remain in the United States. *See* 8 U.S.C. § 1357(a)(1).[6] Thus, considered in the light most favorable to them, Plaintiffs have failed to sufficiently plead that reasonable ICE agents would believe that their year-long effort of identifying possible illegal alien taxicab drivers, and interrogating the persons so identified to determine their citizenship status, was unlawful. Because qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law," *see Malley v. Briggs*, 475 U.S. 335, 341 (1986), this Court must conclude that the Defendants are entitled to qualified immunity for their actions in mistakenly placing the Plaintiffs on the working list, causing them to come to the PPA headquarters, and interrogating them regarding their immigration status.

This Court also concludes that Defendants are entitled to qualified immunity in their alleged conduct of continuing to detain the Plaintiffs after they had determined that they were citizens.[7] Plaintiffs allege that they were kept at the PPA headquarters until the ICE operation was concluded so that they could not tip off other taxicab drivers about the ICE operation.

---

[6]The statute provides that:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant -- (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States . . . .

8 U.S.C. § 1357(a)(1).

[7]The Amended Complaint fails to allege with specificity the amount of time each Plaintiff was actually detained after his citizenship status was confirmed. While Plaintiffs alleges that they were detained "for several additional hours," they only allege the time that each Plaintiff arrived at the PPA headquarters, not the times that their citizenship statuses were each determined, or the time they were actually permitted to leave. This Court notes that each Plaintiff was apparently present at the PPA headquarters for different amounts of time since each arrived at different times. For example, while the letters advised the recipients to arrive at 9:30 (*see* Am. Compl. Ex. A, B), Plaintiff Shittu alleges he arrived at 7:00 a.m. (Am. Compl. ¶ 21), Plaintiff Bounthisane arrived at 9:00 a.m. (*id.* ¶ 53), and Plaintiff Lawal arrived at 9:30 a.m. (*Id.* ¶ 85.)

Although Plaintiffs characterize the continued detention as conscience-shocking, they do not allege or argue that the Defendants' stated purpose for keeping them at the PPA headquarters until the operation concluded was not legitimate. While this Court deeply sympathizes with Plaintiffs having to wait for some additional time after their citizenship had been established, the Supreme Court has counseled that "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also United States v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005) ("Of trifles the law does not concern itself: De minimis non curat lex."); *Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996) (Posner, J.) (outlining the contours of de minimis intrusions that do not violate the Fourth Amendment). While they claim they were required to remain, to remain seated, and to not speak, Plaintiffs do not allege that once their citizenship status was confirmed that they were thereafter handcuffed or treated in the same manner as those determined to be illegal aliens. Plaintiff Lawal alleges that those who were determined to be legally present were provided with food and drink while they waited. This Court finds that, considered in the light most favorable to them, Plaintiffs have failed to sufficiently plead that reasonable ICE agents would believe that the minimal intrusion of requiring the Plaintiffs to remain, remain seated, and refrain from talking until after the operation was concluded, was unreasonable or unlawful. Accordingly, Defendants are entitled to qualified immunity for this conduct as well.

For these reasons, this Court grants Defendants' Motion to Dismiss. An appropriate order follows.[8]

---

[8] Because Plaintiffs have already had the opportunity to amend their complaint in the face of the same arguments raised by Defendants in the instant Motion to Dismiss, and failed to correct the defects identified by Defendants and found valid herein, this Court finds no cause to grant Plaintiffs an additional opportunity to amend their pleading.